UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


| | |
|---|---|
| JOHNSON COUNTY CITIZEN COMMITTEE FOR CLEAN AIR AND WATER, et. al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) NO. 3:05-0222 ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et. al., | ) ) ) |
| Defendants. | ) |

MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss (Docket No. 10), to which Plaintiffs have responded in opposition (Docket No. 14). For the reasons explained herein, Defendants' Motion is GRANTED.

I. Introduction

The Clean Water Act ("CWA") was adopted to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve that goal, the CWA prohibits the discharge of any pollutant into waters of the United States except in accordance with certain restrictions. 33 U.S.C. § 1311(a). Discharges of pollutants from "point sources"[1] are regulated under the National Pollution Discharge Elimination System ("NPDES")

---

[1] The CWA defines "point source" as "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

1

permit program established in CWA Section 402, 33 U.S.C. § 1342. A person discharging pollutants from a point source into waters of the United States must secure a NPDES permit. NPDES permits contain technology-based effluent limitations and, where necessary, more stringent limitations to ensure that receiving waters comply with water quality standards. 33 U.S.C. §§ 1311-1312.

The CWA recognizes that states bear "the primary responsibilit[y] and right[] . . . to prevent, reduce, and eliminate pollution." 33 U.S.C. § 1251(b). To that effect, the CWA specifically established as "the policy of Congress that the States . . . implement the [NPDES] permit programs." Id.; District of Columbia v. Schramm, 631 F.2d 854, 860 (D.C. Cir. 1980)(stating that the CWA's provisions and legislative history "reflect the desire of Congress to put the regulatory burden on the States and to give the [EPA] broad discretion in administering the program."); Chesapeake Bay Found, Inc. v. Va. State Water Control Bd., 495 F. Supp. 1229, 1232 (E.D. Va. 1980)("A state's administration of an NPDES program is indicative of Congress' intent to 'recognize, preserve and protect the primary responsibilities and rights of states to prevent, reduce and eliminate pollution . . . .'").

Under CWA Section 402(b), 33 U.S.C. § 1342(b), a state may apply to the EPA for authority to administer the NPDES program and issue the required permits within the state. On May 8, 1991, the EPA authorized Tennessee, through the Tennessee Department of Environment and Conservation ("TDEC"), to administer the NPDES program in Tennessee. 56 Fed. Reg. 21,376 (May 8, 1991).

The EPA's role once a state has assumed NPDES permitting authority is "supervisory."

2

Case 3:05-cv-00222   Document 20   Filed 09/09/05   Page 2 of 12 PageID #: 32

Chesapeake Bay Found, 495 F. Supp. at 1232. However, a state that is so authorized must comply with federal standards. 33 U.S.C. § 1342(c)(2) ("Any State permit program under this section shall be at all times in accordance with this section and guidelines promulgated" under the CWA). If the EPA determines that a state is not administering the program in compliance with federal standards, the EPA must provide an opportunity to cure, and, if the deficiency continues, the EPA must withdraw the state's authorization. 33 U.S.C. § 1342(c)(3). As set forth in Section 402(c)(3):

> Whenever the Administrator determines after public hearing that a State is not administering a program approved under this section in accordance with requirements of this section, he shall so notify the State and, if appropriate corrective action is not taken within a reasonable time, not to exceed ninety days, the Administrator shall withdraw approval of such program. The Administrator shall not withdraw approval of any such program unless he shall first have notified the State, and made public, in writing, the reasons for such withdrawal.

33 U.S.C. § 1342(c)(3).

Under certain circumstances, the CWA provides for citizens' suits to enforce EPA duties that are "not discretionary." 33 U.S.C. § 1365(a)(2). The instant case is a citizens' suit challenging the EPA's failure to withdraw the NPDES authorization of the state of Tennessee after it allegedly failed to comply with the requirements of the CWA, 33 U.S.C. § 1365(a)(2). (Docket No. 1). The EPA has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

3

## II. Procedural and Factual History[2]

Plaintiff Blue Ridge Environmental Defense League, Inc. is a non-profit, tax exempt, educational organization and association of citizens' groups and individuals working together to preserve their natural heritage, to protect public health, and to safeguard the environmental quality of North Carolina, Virginia, and Tennessee. (Docket No. 1 ¶ 10). Plaintiff Johnson County Citizen Committee for Clean Air and Water is an authorized chapter of the Blue Ridge Environmental Defense League, Inc. (Id. ¶ 6). The chapter is comprised of over 500 persons who live in Johnson County, Tennessee. (Id.)

The instant dispute stems from the proposed development of a Concentrate Animal Feeding Operation ("CAFO") in and around Johnson County, Tennessee. (Id. ¶ 7). Plaintiffs oppose the development of the CAFO, citing health and safety issues and declines in property value. Plaintiffs requested that the TDEC hold a public hearing regarding the proposed CAFO to allow the citizens of the county to express their concerns. According to Plaintiffs, TDEC has repeatedly failed to comply with the requirements of the CWA and implementing regulations, which require Tennessee to provide the public with a meaningful opportunity for participation in the NPDES permitting process and with judicial review of state-issued NPDES permits. Plaintiffs petitioned the EPA in November 2004 to hold a hearing on Tennessee's implementation of its NPDES program and then to withdraw Tennessee's NPDES delegation due to Tennessee's alleged deficiencies. (Id. ¶ 52). The EPA has yet to make a determination

---

[2]For the sake of clarity and brevity, only those facts necessary for a disposition of Defendants' Motion are included herein.

that Tennessee is out of compliance.

In Count I of their Complaint, Plaintiffs contend that the EPA has a non-discretionary or mandatory duty under the CWA to hold a public hearing concerning Tennessee's alleged noncompliance with the CWA and a subsequent duty to withdraw federal approval of Tennessee's NPDES permit program. (Id. ¶¶ 4, 50). In Count II of their Complaint, Plaintiffs contend that the EPA has failed to timely respond to the petition filed by Plaintiffs in November 2004, requesting that the EPA hold a public hearing and withdraw Tennessee's NPDES program. (Id. ¶¶ 52-53). Count II asserts what is typically referred to as an "unreasonable delay" claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

Defendants have filed a Motion to Dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Docket No. 10). With respect to Count I, Defendants assert that the Court cannot compel the EPA to perform purely discretionary duties, and the EPA has no mandatory duty to hold a hearing or to withdraw Tennessee's NPDES program. Thus, the Court lacks subject matter jurisdiction over Count I, which also fails to state a claim upon which relief can be granted. With respect to Count II, Defendants assert that the Court of Appeals has exclusive jurisdiction over Plaintiffs' unreasonable delay claim. Thus, Count II must also be dismissed.

In response, Plaintiffs maintain that because the EPA has actual knowledge that Tennessee is out of compliance with federal standards, the EPA has a mandatory duty to hold a hearing and to commence withdrawal proceedings of Tennessee's NPDES program. Plaintiffs further maintain that the district court, not the Court of Appeals, has exclusive jurisdiction to

5

review agency action or inaction where there is an alleged failure of the Administrator to perform a nondiscretionary duty.

### III. Standard of Review

It is well settled that federal courts are courts of limited jurisdiction and may hear cases only to the extent expressly provided by statute. Gross v. Houghland, 712 F.2d 1034, 1036 (6th Cir. 1983). Therefore, the first and fundamental question presented by every case is whether the court has jurisdiction to hear it. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. Hudson v. Coleman, 347 F.3d 138, 141 (6th Cir. 2003). Here, Plaintiffs bear this burden.

### IV. Analysis

The CWA authorizes private suits by citizens against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). With respect to Count I of Plaintiffs' Complaint, the critical issue before the Court is whether Plaintiffs allege the breach of any duty that is "not discretionary."

Plaintiffs insist that once the Administrator becomes aware of CWA violations, the Administrator has a mandatory duty to (1) hold a public hearing for purposes of determining whether the state NPDES program is in compliance with the CWA and (2) commence withdrawal proceedings if the EPA makes the determination that the Tennessee NPDES program is out of compliance. In support of their position, Plaintiffs primarily rely on the decisions of

6

three district courts: Save the Valley, Inc. v. EPA, 99 F. Supp.2d 981 (S.D. Ind. 2000)(finding that the EPA Administrator is mandated to make a finding or determination when he "becomes aware" of a violation); South Carolina Wildlife Fed'n v. Alexander, 457 F. Supp. 118, 133 (D. S.C. 1978)(finding that the EPA Administrator cannot ignore a violation once it is called to his attention or else congressional intent would be frustrated, and the district court can compel the Administrator to make a finding); and Illinois v. Hoffman, 425 F. Supp. 71, 77 (S.D. Ill. 1977)(finding that the Administrator's duty to act is triggered "[w]henever a violation is directed to the attention of the Administrator.").

However, the majority of courts considering this issue have rejected the reasoning of the Save the Valley, South Carolina Wildlife Fed'n, and Hoffman courts. See Sierra Club v. Whitman, 268 F.3d 898, 900-03 (9th Cir. 2001); Dubois v. Thomas, 820 F.2d 943 (8th Cir. 1987); Sierra Club v. EPA, Case No. 4:04cv401-RH, Mem. Op. at p. 10 (N.D. Fla. July 8, 2005); Altman v. United States, No. 98-CV-237, 2004 WL 3019171, at *2 (W.D. N.Y. Dec. 30, 2004); Weatherby Lake Improvement Co. v. Browner, No. 96-1155-CV-W-8, 1997 WL 687656, at *1 (W.D. Mo. Apr. 17, 1997). This Court agrees with the majority view and finds that, under the plain terms of the CWA, and considering the legislative history viewed as a whole, the decisions of whether to hold a public hearing and whether to make a subsequent determination that a state is not administering its NPDES program in accordance with the CWA are wholly discretionary exercises of the EPA's authority. Although the CWA mandates that the EPA Administrator "shall" withdraw approval of a state's NPDES program under certain circumstances, the mandatory duty to withdraw approval arises only <u>after</u> the Administrator has determined that a

7

state is not administering its NPDES program in compliance with federal standards. 33 U.S.C. § 1342(c)(3). The plain language of CWA Section 402(c)(3), 33 U.S.C. § 1342(c)(3), does not compel the EPA Administrator to make such a determination by any particular time, or at all. See Sierra Club, Case No. 4:04cv401-RH, Mem. Op. at p. 10 (holding that the statute creates no express requirement that a public hearing regarding the sufficiency of a state NPDES program be held at any specific time, or at all; neither does the statute expressly require the EPA Administrator to determine at any specific time, or at all, whether a state is complying with federal law).

The Administrator is under no mandatory duty to investigate complaints, hold hearings, or make findings of violations in this case. Even if the Administrator has held a public hearing and has determined that the state's administration of its program fails to comply with the CWA, the plain language of Section 402(c)(3) does not trigger an automatic duty on the part of the EPA to withdraw state NPDES program approval. Before withdrawal can occur, the state is entitled to "a reasonable time, not to exceed 90 days" in which to take corrective action. 33 U.S.C. § 1342(c). In addition, the Administrator must notify the state and "ma[ke] public, in writing, the reasons for such withdrawal." 33 U.S.C. § 1342(c)(3).

As other courts have recognized, to adopt Plaintiffs' reading of Section 402(c)(3) would be to eviscerate EPA's discretionary authority. See Weatherby, 1997 WL 687656, at *1 ("To hold otherwise would frustrate the purposes of the [CWA] by requiring the EPA to alter its priorities and expend its limited resources to investigate citizen complaints, regardless of their relative importance."). Plaintiffs' reading also stands at odds with Congress' intent in enacting

8

the NPDES permit program. Congress accorded the EPA the "discretion to allocate its own resources" as it sees fit in order to achieve "a rational enforcement approach." Dubois, 820 F.2d at 948. As the Supreme Court has stated:

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

Heckler v. Chaney, 470 U.S. 821, 831-32 (1985).

Here, although Plaintiffs petitioned the EPA in November 2004 to hold a hearing on Tennessee's implementation of its NPDES program and then to withdraw Tennessee's NPDES delegation (Docket No. 1 ¶ 52), the EPA has yet to make a determination that Tennessee is out of compliance. Without having made such a determination, the EPA has no non-discretionary or mandatory duty to perform. A citizens' suit to enforce such discretionary duties is not available. Therefore, Plaintiffs' claim under Count I must be dismissed for lack of subject matter jurisdiction. See e.g., Whitman, 268 F.3d 898, 900-03 (9th Cir. 2001)(finding that EPA does not have mandatory duty to investigate and make findings, nor does it have a mandatory duty to take enforcement action once a finding is made); Dubois, 820 F.2d 943 (8th Cir. 1987)(after undertaking an extensive study of the legislative history of 33 U.S.C. § 1319(a)(3) and considering that agency's interpretation of statute which it is charged with administering is

9

entitled to considerable deference, finding that the Act imposes only discretionary, rather than mandatory, duty on EPA Administrator to (1) investigate and make finding whenever private citizen asserts violation and (2) take enforcement action upon finding of violation); Sierra Club, Case No. 4:04cv401-RH, Mem. Op. at p. 10 (N.D. Fla. July 8, 2005)("Even if, as plaintiffs allege, the State of Florida is administering its NPDES program without complying with federal requirements, the EPA's delay in initiating withdrawal proceedings implicates no non-discretionary duty. Plaintiffs' complaint fails to allege a basis for relief in this Court."); Altman, 2004 WL 3019171, at *3 (dismissing action under § 1342(c)(3) because statute "does not compel the EPA either to hold a hearing or to make . . . a determination by any specific time, indicating that the withdrawal provision is discretionary"); Weatherby, 1997 WL 687656, at *1 ("The plain language of 33 U.S.C. § 1319(a)(2) and § 1342(c)(2) and (3), as embodied in Section 402c of the Clean Water Act, does not compel the Administrator to investigate complaints or to make findings of violations which would then force EPA to withdraw Missouri's authority to administer a state NPDES program.").[3]

---

[3] See also Ohio Public Interest Research Group, Inc. v. Whitman, 386 F.3d 792, 796-99 (6th Cir. 2004)(holding, in the context of analogous Clean Air Act provision, that the court lacked jurisdiction to review claim that EPA was obliged to make a determination of inadequate administration of Clean Air Act program by State, because prefatory language that "[w]henever the Administrator makes a determination" gives EPA the discretion to make the determination that triggers the statute's obligatory language); Nat'l Wildlife Fed'n v. Adamkus, 936 F. Supp. 435, 440 (W.D. Mich. 1996)(holding, in context of analogous CWA Section 404, 33 U.S.C. § 1344, that "[o]n its face, § 404(I) only triggers a nondiscretionary duty to withdraw approval once EPA has determined after public hearing that the state's administration of the program fails to comply with the CWA, notifies the state, and has given the state a reasonable amount of time to take corrective action. Section 404(I) does not explicitly require EPA to hold public hearings from time to time in the first instance to determine whether a State is administering a program in accordance with § 404.")(emphasis in original); Bravos v. EPA, 324 F.3d 1166, 1171 (10th Cir. 2003)("Despite the 'he

10

The Court now turns its attention to Count II of Plaintiffs' Complaint, Plaintiffs' unreasonable delay claim under the APA, of which Defendants also move for dismissal. Under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Plaintiffs allege that on November 26, 2004, they petitioned the EPA to "withdraw Tennessee's NPDES delegation, and/or a request to hold a hearing under Section 402(c)(3) of the CWA." (Docket No. 1 ¶ 52). Plaintiffs allege that the APA requires an agency to "timely respond to any issue put before the agency," and the EPA' alleged failure to timely respond in this instance constitutes "agency action unreasonably delayed." (Id. ¶ 53).

According to Plaintiffs, the district court has original jurisdiction of their unreasonable delay claim because it "involves EPA's unreasonable delay in commencing nondiscretionary procedures mandated by the CWA." (Docket No. 14 at 20). However, as the Court explained above, the actions sought by Plaintiffs are not non-discretionary or mandatory duties. (See Mem. Op. pp. 7-10). Thus, the case law cited by Plaintiffs regarding the district court's jurisdiction as set forth in CWA Section 505(a)(2) is inapposite.

This Court lacks jurisdiction over Count II because the substantive action Plaintiffs seek to compel (the commencement of proceedings to make a determination upon their petition alleging that Tennessee's NPDES program is deficient, and, ultimately, a decision on their petition to withdraw EPA's approval of Tennessee's NPDES program) is subject to review in the Court of Appeals. Thus, any claim that the EPA has unreasonably delayed taking such action

---

shall' language, the weight of authority is that § 309(a)(3) does not impose a mandatory duty on the Administrator.").

11

can only be heard in the Court of Appeals. 33 U.S.C. § 1369(b)(1)(D)(providing that judicial review of decisions under Section 1342 lie in the court of appeals); see Sierra Club, Case No. 4:04cv401-RH, Mem. Op. at p. 8 (holding that EPA decision "to withdraw or not to withdraw a State's NPDES authorization constitutes final agency action reviewable in the appropriate court of appeals[]" and "[a]ny undue delay by the EPA in making a decision is also reviewable in the court of appeals.").

Further, where a statute commits review of final agency action to the Court of Appeals, any suit seeking relief that might affect the appellate court's future jurisdiction is also subject to exclusive appellate court review. See e.g., La Voz Radio de la Communidad v. FCC, 223 F.3d 313, 318 (6th Cir. 2000); George Kabeller, Inc. v. Busey, 999 F.2d 1417, 1421-22 (11th Cir. 1993)(holding that when ultimate authority to review an action lies in the court of appeals, any unreasonable delay claim relating to the court's prospective jurisdiction also lies in the court of appeals). Accordingly, Count II must also be dismissed.

V. Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss Counts I and II of the Complaint (Docket No. 10) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

12